UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| NELSON STURDIVANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:19-cv-1129-GMB |
| ) | |
| CHEMICAL WASTE ) | |
| MANAGEMENT, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the court is the Motion to Dismiss filed by Defendant Chemical Waste Management, Inc. ("CWM"). Doc. 5. Plaintiff Nelson Sturdivant has filed a response to the motion (Doc. 10), and CWM has filed a reply brief in support. Doc. 14. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. After careful consideration of the parties' submissions and the applicable law, and for the reasons that follow, the court concludes that the motion to dismiss is due to be granted, but that Sturdivant should be given leave to amend his complaint in compliance with the directives below.

### **I. JURISDICTION AND VENUE**

The court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction, nor do they contest that venue is proper in the Northern District of Alabama. The court finds adequate

allegations to support the propriety of both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following is a recitation of the facts as alleged in Sturdivant's complaint. Doc. 1. CWM operates a hazardous waste facility in Emelle, Alabama and provides a broad range of waste management services nationwide. Doc. 1 at 4. CWM is shareholder-owned and publicly traded on the New York Stock Exchange. Doc. 1 at 4. Sturdivant, a resident of Sumter County, Alabama, worked for CWM for more than 33 years. Doc. 1 at 5. Most recently, he worked as an Operations Manager at CWM's Emelle facility and managed its Leachate Treatment Operations, Stabilization Operations, Bulk Storage Operations, and Tan Farm Four Operations. Doc. 1 at 5. He worked in this capacity for 21 years. Doc. 1 at 5. Through his employment, Sturdivant gained knowledge of the applicable laws, regulations, and permitting standards for the treatment, disposal, and reporting of contaminated landfill waste. Doc. 1 at 5.

In July 2015, Sturdivant voiced a concern to Mike Davis, the CWM District Manager, that operations at the Emelle facility were violating safety standards and not in compliance with the laws and regulations governing the treatment and disposal of hazardous waste. Doc. 1 at 6. Safety Manager Al Talbott and Technical Manager Guy Coghlan also were aware of the violations. Doc. 1 at 6. Later that month, CWM placed Sturdivant, Talbott, and Coghlan on Performance Improvement Plans

("PIPs") for purported job performance issues. Doc. 1 at 6. This occurred even though CWM had issued Sturdivant a performance evaluation in May 2015 finding that he "met all expectations" in five areas and "exceeded expectations" in one area. Doc. 1 at 6.

As a result of the PIPs, Allen Horne, the Gulf Coast Area Human Resources Director, decreased pay raises and bonuses in 2016 for Sturdivant, Talbott, and Coghlan. Doc. 1 at 7. Their coworkers who did not report dangerous conditions and violations did not have their pay and bonuses reduced. Doc. 1 at 7. On September 16, 2015, CWM determined that Sturdivant made a "conscious effort to improve overall job performance and communications[.]" Doc. 1 at 7. But in 2016, Sturdivant, Talbott, and Coghlan discovered that someone at CWM deliberately mishandled contaminated equipment. Doc. 1 at 7. And in August 2017, the three discovered that another piece of contaminated equipment had been hidden on CWM property. Doc. 1 at 7. On October 11, 2017, Sturdivant, Talbott, and Coghlan reported the violations to Davis. Doc. 1 at 7. Davis then reported what they told him to his supervisor and the CWM legal department. Doc. 1 at 8. Even so, on October 31, 2017, Horne issued Sturdivant, Talbott, and Coghlan a "Final Warning Documentation" for their purported failure to timely report the mishandling of the contaminated equipment. Doc. 1 at 8.

On November 3, 2017, Sturdivant, Talbott, and Coghlan sent a memorandum

to Janne Foster, CWM's Senior Legal Counsel, reporting that CWM continued to engage in unlawful conduct. Doc. 1 at 8. The three men expressed hesitation at reporting the violations because they believed CWM had "retaliated against them for their previous [reports] by placing them on PIPs and issuing Final Warnings." Doc. 1 at 8. In the memorandum, Sturdivant, Talbott, and Coghlan reported the following:

    a.    Defendant failed to mark over 4,000,000 gallons of contaminated (by contact) rain water as "leachate," despite samples that showed compounds above the limit for hazardous waste leachate.

    b.    Defendant intentionally ignored permit conditions regarding landfill disposal of waste.

    c.    Defendant ignored explicit review comments from the Alabama Department of Environmental Management ("ADEM") received July 21, 2015.

    d.    Defendant failed to notify ADEM within seven (7) days that a leak detection system exceeded the action leakage rate set forth in the table of the permit.

    e.    Defendant failed to ensure waste delivered in gondola cars did not come in contact with the inside of the gondola containers. Further, Defendant failed to adhere to required labeling requirements and did not enforce the spill clean-up policy.

    f.    On September 19, 2017, Plaintiff sent an email explaining the regulations that required Defendant to send a letter to the Regional Administrator if a discrepancy was not resolved within fifteen (15) days of receipt. Defendant failed to report the discrepancy.

Doc. 1 at 9. The same day, CWM purportedly received a complaint from Shaunte

Stallworth, a supervisor, that Sturdivant made "disturbing remarks" about the company during a meeting. Doc. 1 at 9. Stallworth had not attended the meeting in question. Doc. 1 at 10.

Horne investigated Stallworth's complaint and determined that Sturdivant violated his final warning, which warranted termination of his employment. Doc. 1 at 10. On November 8, 2017, CWM terminated Sturdivant for engaging in "unprofessional conduct and disrespectful behavior." Doc. 1 at 10. Sturdivant believed CWM's denial of noncompliance with the laws and regulations governing the treatment and disposal of hazardous waste was fraudulent. Doc. 1 at 10. He believed that CWM's failure to correct the noncompliance, to inform regulators, and omit incidences of violations "amounted to false conduct," and that CWM engaged in a course of conduct rising to the level of "wire and/or mail fraud[.]" Doc. 1 at 10.

CWM's violations included, but were not limited to, the following:

   a. Violating safety standards and non-compliance with the laws and regulations relating to treatment of hazardous waste by taking customers' contaminated property off site, which was designed for landfill disposal, and by falsifying PCB certificates of disposal relating to a trailer and a metal lathe, and failure to report such violations;

   b. Allowing a berm breach to contaminate the clean side of cell four south in trench twenty-two, which contained approximately ten to twelve million gallons of water that became a Leachate (FO39). Additionally, all or most of the sand windows were not uncovered, and none of the divider or rain berms were excavated prior to waste placement in cell four of trench twenty-two. Also, by

5

> failing to report the breach, and by employing an improper treatment (solidification) in violation of permit requirements, standards of operation and the laws and regulations relating to the proper treatment and disposal of hazardous waste products, that require, among other things, that waste be treated prior to going into a landfill;
>
> c. Failing to inform the State of Alabama of the violation of its permit;
>
> d. Failing to notify the federal authorities of the breach in a timely manner;
>
> e. Receiving bulk solid PCB waste in open top rail gondola cars and allowing puncture of the bags and contamination of the gondola container; PCB markings and labels were removed from Gondola cars without proper decontamination procedures per PCB regulations;
>
> f. Failing to report significant manifests discrepancies to the Regional Administrator in a timely manner, and other intentional actions in violation of its permit and the laws and regulations relating to solid waste treatment and disposal.

Doc. 1 at 11. Accordingly, CWM "engaged in wire and mail fraud by failing to report and disclose violations to government agencies, the [U.S. Securities and Exchange Commission], and its shareholders." Doc. 1 at 12.

Sturdivant also alleges that CWM "falsif[ied] safety compliance reports filed with both state and federal authorities and fail[ed] to disclose pertinent information to the appropriate authorities," thereby sidestepping the "consequences of truthfully reporting the mistreatment and disposal of hazardous waste." Doc. 1 at 12. CWM thereby "defrauded" state and federal authorities to protect its own interests and

6

failed to remedy known violations. Doc. 1 at 12. Because of his knowledge of the applicable laws, regulations, and permitting standards, Sturdivant "knew he was reporting violations" of the Sarbanes-Oxley Act. Doc. 1 at 12–13. Sturdivant also alleges that "a reasonable person with [his] knowledge would have considered [CWM's] fraudulent practices to be a violation of Sarbanes-Oxley." Doc. 1 at 13. He contends that his whistleblowing "was, at the very least, a contributing factor in [CWM's] decision to terminate" his employment. Doc. 1 at 13.

## III. STANDARD OF REVIEW

In consideration of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level,"

*id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

Section 806 of the Sarbanes-Oxley Act makes it unlawful for a publicly traded company to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against any employee" because the employee engaged in activity protected by the Act. 18 U.S.C. § 1514A(a)(1). To make out a viable claim under the Sarbanes-Oxley Act's antiretaliation provision, Sturdivant must allege that (1) he engaged in protected activity, (2) CWM knew or suspected that he engaged in protected activity, (3) he suffered an adverse employment action, and (4) the protected activity was a contributing factor in the adverse employment action. *Johnson v. Stein Mart, Inc.*, 440 F. App'x 795, 800 (11th Cir. 2011) (citing 29 C.F.R. § 1980.104(b)(1)).

To engage in "protected activity," an employee must provide information regarding any conduct he reasonably believes to be one or more of six enumerated types of misconduct: mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), securities fraud (18 U.S.C. § 1348), a violation of any rule or regulation of the Securities and Exchange Commission ("SEC"), or any provision of federal law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1). Further, the information must be provided to, or the investigation

conducted by, (1) a federal regulatory or law enforcement agency, (2) any member or committee of Congress, or (3) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct). 18 U.S.C. § 1514A(a)(1). It is also protected activity "to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to" an alleged violation. 18 U.S.C. § 1514A(a)(2).

A "reasonable belief" means that Sturdivant (1) subjectively believed that the conduct was fraudulent, and (2) this belief was objectively reasonable—*i.e.*, that a reasonable person in the same circumstances with the same training and experience would hold the same belief. *Wallace v. Tesoro Corp.*, 796 F.3d 468, 474–75 (5th Cir. 2015); *see also Gale v. U.S. Dep't of Labor*, 384 F. App'x 926, 929 (11th Cir. 2010) ("[A] common sense interpretation of the statute's language dictates that the employee has an actual belief, as well as an objectively reasonable belief, that his company's conduct is illegal or fraudulent.").

CWM argues that Sturdivant "did not have any reasonable belief that any covered fraud occurred; but instead, his complaints centered on potential environmental violations, which are not complaints covered by § 1514A." Doc. 5 at 5. Specifically, CWM contends that Sturdivant's allegation that CWM engaged in

wire and mail fraud by failing to report environmental violations is conclusory, and that Sturdivant does not allege that he ever complained about wire or mail fraud. Doc. 5 at 8–9. CWM further asserts that Sturdivant cannot rely on Sarbanes-Oxley's shareholder fraud provision because Sturdivant did not allege that CWM "intended to deceive shareholders in taking its actions." Doc. 5 at 10.

The question before the court is a narrow one: whether Sturdivant's complaint, viewed in the light most favorable to him, plausibly alleges that he was fired at least in part for reporting fraudulent activity that he reasonably believed to be covered by the Sarbanes-Oxley Act. Sturdivant alleged in sufficient detail that CWM failed to report environmental violations to state and federal authorities, as well as its shareholders, and he contends that this conduct constituted mail fraud, wire fraud, and shareholder fraud—three enumerated categories under Sarbanes-Oxley. But "[t]he requirement that the information provided relate to one of the six specified categories is crucial," and "all six categories relate to fraud." *Northrop Grumman Sys. Corp. v. U.S. Dep't of Labor, Admin. Review Bd.*, 927 F.3d 226, 229 (4th Cir. 2019). The antiretaliation provision "does not extend protection to every employee complaint about possible improper or even illegal conduct." *Id.* Rather, it protects an employee who "provides information regarding conduct that he or she reasonably believes violates one of the six categories listed by Congress in § 1514A(a)(1)." *Id.* at 229–30.

While Sturdivant's allegations of CWM's misconduct and his resulting termination are detailed, his claim that CWM's actions amounted to mail fraud, wire fraud, or fraud against its shareholders is scant and conclusory. Accepting Sturdivant's allegations as true, he asks the court simply to assume that CWM's environmental violations and its failure to report those violations to regulatory authorities and its shareholders necessarily means that it committed mail fraud, wire fraud, or shareholder fraud. Where Sturdivant's complaint falls short is in its failure to explain how, specifically, he reasonably believed one of these particular violations occurred. Without connecting these dots, Sturdivant's allegations are properly characterized as a garden-variety "complaint about possible improper or even illegal conduct." *Northrop Grumman*, 927 F.3d at 229.

"Shareholder fraud involves false representations of material fact intended to deceive shareholders and reliance by shareholders on those false representations to their detriment." *Id.* at 233. The elements of a claim for shareholder fraud are a material misrepresentation or omission with the specific intent to deceive; a connection to the purchase or sale of a security; and reliance, economic loss, and a causal connection between the misrepresentation and loss. *Id.* None of Sturdivant's factual complaints include all or even most of these elements. Instead, he asks the court to read the elements of shareholder fraud into the conduct he actually complained of—violations of state and federal environmental laws and regulations.

The same goes for mail or wire fraud. "Aside from the means by which a fraud is effectuated, the elements of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, are identical." *United States v. Ward*, 486 F.3d 1212, 1221 (11th Cir. 2007). Both "require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the mails or wires for the purpose of executing the scheme or artifice." *Id.* at 1222 (internal quotation marks omitted). The first element "requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). "A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." *Id.* (internal quotation marks omitted). Again, none of Sturdivant's allegations center on conduct that relates to the elements of wire and mail fraud. The court cannot assume that Sturdivant's allegedly reasonable belief that CWM violated state and federal environmental laws and regulations necessarily results in a reasonable belief that CWM's actions conformed with the statutory definition of mail or wire fraud. Indeed, while he may have earnestly believed that he was reporting some form of misconduct, there is nothing in the complaint to suggest that Sturdivant specifically believed CWM committed mail or wire fraud.

"The text and design of § 1514A does not suggest any heightened showing of

a factual basis for the suspected fraud." *Rhinehimer*, 787 F.3d at 810. Rather, "[t]he well-established intent of Congress supports a broad reading of the statute's protections." *Id.* Accordingly, "an interpretation demanding a rigidly segmented factual showing justifying the employee's suspicion undermines [Sarbanes-Oxley's] purpose and conflicts with the statutory design, which turns on employees' reasonable belief rather than requiring them to ultimately substantiate their allegations." *Id.* Even so, Sturdivant must specifically allege that he had a reasonable belief that CWM was committing one of the six categories of fraud enumerated in Sarbanes-Oxley's antiretaliation provision when he reported the misconduct to his supervisors.[1]

## V. CONCLUSION

For these reasons, it is ORDERED that Defendant Chemical Waste Management, Inc.'s Motion to Dismiss (Doc. 5) is GRANTED, and Plaintiff Nelson Sturdivant's claims are DISMISSED without prejudice.

It is further ORDERED that Sturdivant shall file an amended complaint on or before **March 26, 2020** if he wishes to cure the deficiencies outlined above. Should he fail to do so within the time allotted, this suit will be dismissed with prejudice.

---

[1] Although the law does not mandate that the court grant Sturdivant leave to amend because he is represented by counsel and has not requested it, *see Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542–43 (11th Cir. 2002), the court concludes that leave to amend is appropriate here. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

DONE and ORDERED on March 5, 2020.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE